```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
MARGARET BYRNE, AS ADMINISTRATOR OF THE  :
ESTATE OF NADINE WUENSCH, DECEASED,      :
                                         :    03 Civ. 5488 (DLC)
              Plaintiff,                 :
                                         :    OPINION & ORDER
         -v-                             :
                                         :
TIMES SQUARE DISTRICT MANAGEMENT         :
ASSOCIATION, INC., THE TIMES SQUARE      :
BUSINESS IMPROVEMENT DISTRICT            :
COMMITTEE, INC. and FRANCISCO LOPEZ,     :
JR.,                                     :
                                         :
              Defendants.                :
                                         :
-----------------------------------------X
```

Appearances:

For plaintiff:
Patrick J. Dwyer
Smith, Stratton, Wise, Heher & Brennan, L.L.P.
2 Research Way
Princeton, New Jersey 08540

For defendant Times Square District Management Ass'n, Inc.:
Michael B. Gallub
Herzfeld & Rubin, P.C.
40 Wall Street
New York, New York 10005

For defendant Francisco Lopez:
H. Nicholas Goodman
Quirk & Bakalor, P.C.
845 Third Avenue
New York, New York 10022

DENISE COTE, District Judge:

On January 25, 2003, defendant Francisco Lopez, Jr. ("Lopez") suffered an epileptic seizure while driving a van in Times Square and struck and killed Nadine Wuensch ("Wuensch"), a young German woman who worked in New York as an au pair. Lopez was working at the time as an employee of the Times Square District Management Association, Inc. ("Association"), the not-

for-profit entity that manages the Times Square Business Improvement District ("District"). Margaret Byrne ("Byrne"), as administrator for Wuensch's estate, has sued Lopez, the District, and the Association. This Opinion addresses the parties' summary judgment motions and plaintiff's motion to amend.

Background

The following facts are undisputed, unless otherwise indicated. Wuensch was a German citizen working in the United States since September 2002 as an au pair. Her immediate family consists of her mother and two siblings, all of whom visited Wuensch in the United States for approximately two weeks. The plaintiff asserts that Wuensch planned to return to Germany to work as a kindergarten teacher at some point after finishing one or two years of work as an au pair. Wuensch's mother, Andrea Wuensch, has suffered for years from Crohn's disease. The plaintiff has offered evidence that Wuensch performed household chores while living with her family in Germany, particularly when her mother was ill or hospitalized, and helped to provide care for her younger sister.

On January 25, 2003, while employed as a public safety officer by the Association, Lopez was driving a 2003 Ford van owned and maintained by the Association. The van was approximately three months old. The van struck Wuensch and two other women at Times Square, specifically, the intersection of 42nd Street and Seventh Avenue, while Wuensch was walking in a

2

crosswalk with a green light and the van was making a right turn. She died within hours from the injuries she suffered when struck. Lopez contends that he suffered an epileptic seizure and blacked out.

Lopez was charged with a violation of Section 510 of the Vehicle and Traffic Law ("VTL"). At a hearing held on October 31, 2003, Lopez was represented by counsel provided by the District, and a representative of the District was present. No eyewitness to the accident, any investigating police officer, or medical personnel testified; Lopez was the sole witness, and he invoked his Fifth Amendment privilege[1] and declined to testify about the accident or his medical condition. No medical records were presented at the hearing. An Order of December 1, 2003, revoked Lopez' license "for at least 30 days" pursuant to the hearing and Section 510. The cause of the action was indicated as a violation of VTL Section 1146, to wit, the "failure to use due care" on January 25, 2003.

The Administrative Law Judge prepared a "finding sheet" dated October 31, 2003, which explained that the hearing was held pursuant to Section 510 to investigate a fatal accident. It described the intersection where the accident occurred and the condition of the streets. It noted that a police report opined that Lopez' failure to yield the right of way was an "apparent contributing factor" to the accident. The ALJ explained that the

---

[1] Lopez had been under investigation by the Borough of New York's district attorney's office for his role in the accident.

"available" evidence indicates that Lopez violated Section 1146 and a New York City traffic rule by failing "to use due care to avoid colliding with a pedestrian," and that that failure contributed to the accident and warranted the revocation of Lopez' license. The ALJ indicated that Lopez refused to testify as to the events and circumstances leading up to and through the accident, but that a report Lopez filed at the hearing indicated that he had suffered from an epileptic seizure at the time of the accident. The ALJ observed that that claim was "unsupported by any testimony or medical evidence produced at the hearing."

In the month prior to the accident Lopez saw a doctor after he suffered what may have been a seizure while at work. On December 30, 2002, Lopez was told that he had not initially answered his radio when called. A co-worker reported that when Lopez was located, he appeared pale and his speech was slurred. Lopez's supervisor sent him home with instructions to get a doctor's note before returning to work. The parties dispute what medical care Lopez received that day, what he told the doctor, what further testing he was told to get, and what the District learned about those referrals. Lopez has submitted an affidavit indicating that he understood that he was being referred for tests on his head. It is undisputed that Lopez never went for further testing before the accident and that he provided the Association with a written authorization from a doctor allowing him to return to work on December 31. There were no restrictions indicated on the authorization. It is also undisputed that Lopez

had complained to his personal physician for some months prior to the accident about symptoms which are now attributed to his epilepsy, but which were not so diagnosed at the time.

The complaint contains four causes of action. The first claim is for negligence and seeks recovery for the estate. The second claim is for negligence and seeks recovery for pecuniary loss suffered by Wuench's mother and two siblings. Both of those claims are brought against all defendants. The third claim is brought against the District and Association and seeks recovery for their negligence and breach of duty as Lopez' employers. The final claim seeks punitive damages from Lopez.

Discussion

1. Motions for Summary Judgment

Following the close of discovery, the defendants have moved for summary judgment. The defendants' motion for summary judgment on plaintiff's claim for recovery brought on behalf of Wuench's siblings is granted on consent of the plaintiff. The remainder of the defendants' motions for summary judgment are denied on the ground that the plaintiff has presented sufficient evidence to raise questions of fact requiring resolution at trial. One of the defendants' motions, the motion addressed to plaintiff's failure to file a notice of claim, deserves a more extended discussion and is addressed below.

Byrne has cross-moved for partial summary judgment based on

the doctrine of collateral estoppel, and to amend her complaint to add a claim for punitive damages against the District. The latter motion is addressed below. In the first of these motions, Byrne asserts that a determination at a motor vehicle hearing suspending Lopez' license, based on a finding that he did not exhibit due care, collaterally estops the defendants from presenting a medical emergency defense at trial.

"[A] federal court must apply the rules of collateral estoppel of the state in which the prior judgment was rendered." Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). In New York, collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same." Id. (quoting Ryan v. New York Tel. Co., 62 N.Y.2d 494, 478 (1984)). Collateral estoppel applies "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." Id. (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999)). Because the hearing did not necessarily decide the emergency medical defense issue and did not provide a sufficiently full and fair opportunity to present that defense, the motion is denied.

2. Notice of Claim

The District moves to dismiss the claims filed against it and the Association on the ground that the plaintiff did not file a notice of claim against the Association within the period required by law for serving such notice on a public benefit corporation. It contends that the Association is a public benefit corporation; Byrne contends the Association is a not-for-profit corporation for which there is no notice of claim requirement.

Section 2980 of the New York Public Authorities Law ("Section 2980") provides that "[n]o wrongful death action against a public authority or <u>public benefit corporation</u> shall be commenced unless a notice of claim has been served on the authority or corporation in accordance with the provisions of section fifty-e of the general municipal law." N.Y. Pub. Auth. Law § 2980 (emphasis supplied). Under Section 50-e of the New York General Municipal Law, in a wrongful death action against a public corporation, the notice of claim must be served within ninety days from the appointment of a representative of the decedent's estate. N.Y. Gen. Mun. Law § 50-e(1)(a). While Section 50-e contemplates requests for an extension of the time to serve a notice of claim, it also provides that the "extension shall not exceed the time limited for the commencement of an action by the claimant against the public corporation." Id. § 50-e(5). A two year statute of limitations applies to this wrongful death action. N.Y. Pub. Auth. Law § 2981. The two year

7

statute of limitations period has run in this action, and thus no extension of time to serve a notice of claim may be given.

A public benefit corporation is defined as a "corporation organized to construct or operate a public improvement wholly or partly within the state, the profits from which inure to the benefit of this or other states, or to the people thereof." N.Y. Gen. Constr. Law § 66(4). A public benefit corporation is classified as a type of "public corporation" under New York law. Id. § 65(b)(3). A "not-for-profit corporation" is separately classified as a "corporation formed other than for profit." Id. at § 65(c)(4).

The District is a Business Improvement District ("BID"). Legislation in 1989 streamlined the procedures for the creation and operation of BIDs. N.Y. Gen. Mun. Law § 980 et seq. The statute contained the following explanation of the purpose of the legislation:

> It is hereby found and declared that the business districts within many municipalities in the state are in a deteriorated condition. This condition adversely affects the economic and general well-being of the people of the state. It is further found and declared that the establishment of business improvement districts is an effective means for restoring and promoting business activity. . . . It is the intent of the state to provide for a more streamlined process of establishing and operating these districts, of extending existing business improvement districts and amending the district plans of existing business improvement districts.

N.Y. L. 1989, c. 282, § 2.

When a BID is established, owners of certain real property within the BID area pay periodic assessments to the municipality.

These funds are disbursed to the BID to "fund the construction of capital improvement to land in the district and the provision of certain services intended to promote business activity in the district." Kessler v. Grand Cent. Dist. Mgmt. Ass'n, Inc., 158 F.3d 92, 94 (2d Cir. 1998). For each BID, a not-for-profit corporation called a "district management association" is established to carry out the activities prescribed in the BID's plan. Id. at 95. The law provides that "[t]here shall be a district management association for each district established pursuant to the provisions of this article (which shall pursuant to the <u>not-for-profit corporation law</u> have one or more classes or membership, voting or non-voting) for the purpose of carrying out such activities as may be prescribed in the plan." N.Y. Gen. Mun. Law. § 980-m (emphasis supplied). Because the responsibilities and powers of a BID are circumscribed, a BID does not "exercise the core power of sovereignty typical of a general purpose governmental body." Kessler, 158 F.3d at 104. To the contrary, the activities of a BID and its management association are subject to close control by municipal authorities. Id. at 106.

The Association is a not-for-profit corporation and not, as the District argues, a public benefit corporation. The legislation establishing BIDs and their management associations requires adherence to the voting rights established under the not-for-profit corporation law. The Certificate of Incorporation for the Association identifies it as a "not-for-profit"

9

corporation. This self-identification, when coupled with the statutory reference to not-for-profit corporations, establishes that the Association is properly classified as a not-for-profit corporation.

The cases on which the District relies do not compel a different conclusion. Aguilar v. New York Convention Center Operating Corp., 174 F. Supp. 2d 49 (S.D.N.Y. 2001), considered whether an entity was entitled to sovereign immunity; its founding statute clearly labeled it a public benefit corporation, but the court found this fact unhelpful in deciding the Eleventh Amendment issue. Id. at 51-52. Buffalo News v. Buffalo Enterprise Development Corp., 84 N.Y.2d 488 (1994), considered whether a city-funded urban development corporation was an "agency" under New York's Freedom of Information Law, a statute that New York courts have held should be "liberally construed" and which contains a functional definition of a government agency. Id. at 492 (citation omitted). Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co., 70 N.Y.2d 382 (1987), involved an entity that was undisputedly a public benefit corporation pursuant to its founding statute; the issue in that case was whether the entity should be immune to punitive damages because it performed an "essential public function." Id. at 387. Bovich v. East Meadow Public Library, 789 N.Y.S.2d 511 (App. Div. 2005), involved a tort claim filed against a public library funded by a school district. The court concluded that the library "is so closely tied to the [school district] by its purse-strings that

10

the very rationale requiring a notice of claim as a condition
precedent to suit against the [school district] dictates that a
notice of claim should also be required as a condition precedent
to suit against the Library." Id. at 516. No such close
relationship between the BID and a recognized public benefit
corporation exists here. In Tumm v. Town of Eastchester, 779
N.Y.S.2d 217 (App. Div. 2004), whether the consortium described
in the opinion as "a not-for-profit corporation which provides
jointly-operated community-based recreational programs for
individuals with developmental disabilities" was indeed a public
benefit corporation did not appear to be a disputed issue, id. at
218; rather, the opinion considered whether the trial court had
discretion to grant a petition for leave to serve a late notice
of claim. Id. Finally, Tucker v. Battery Park City Parks Corp.,
642 N.Y.S.2d 891 (App. Div. 1996) (mem.), identifies a parks
corporation as a public benefit corporation, but disposes in a
sentence of the petitioner's argument that this fact in some way
affected his at-will employee status. Id. at 892.

3. Motion to Amend the Complaint

Plaintiff's motion to amend the complaint to add a claim of
punitive damages against the District is denied. The motion was
filed with the summary judgment motions, long after the close of
discovery. The District is not insured for punitive damages and
would have considered the need for separate counsel, in addition
to counsel retained by its insurers, if it had faced a punitive

11

damages claim in this litigation. The plaintiff has not presented any adequate explanation for the delay in bringing a punitive damages claim. In any event, the motion must also be denied as futile. The plaintiff has not presented evidence from which a jury could find that the District authorized, participated in, consented to, or ratified the wrongful conduct of Lopez that resulted in Wuensch's death, that it deliberately retained an unfit employee, or that any wrongful act by Lopez was pursuant to a recognized business system of the Association. See Loughry v. Lincoln First Bank, 67 N.Y.2d 369, 378 (1986).

## Conclusion

Defendants' motion for summary judgment on plaintiff's claim for recovery brought on behalf of Wuench's siblings is granted. Summary judgment is denied on the remainder of plaintiff's claims. Plaintiff's motion to amend the complaint is denied.

SO ORDERED:

Dated:   New York, New York
         May 25, 2005

_____
DENISE COTE
United States District Judge